IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CR-09-02-S-BLW |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| VANESSA CATTANEA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court is Vanessa Cattanea's ("Cattanea") Motion for

Release Pending Appeal (Docket No. 130).  Having reviewed the record and briefs

of the parties, and being otherwise fully informed, the Court enters the following

Order denying the Motion for the reasons set forth below.

## BACKGROUND

Cattanea and co-Defendant Ronald Bret Hamilton ("Hamilton") were

charged with 84 counts of health care fraud and aiding and abetting health care

fraud arising out of billings to the State of Idaho, Department of Health and

**Order - 1**

Welfare, by Teton Family Services, Inc.  Cattanea's primary defense was lack of intent to defraud.

Cattanea had moved to sever from Hamilton's trial on the grounds that Hamilton's testimony was necessary to explain and refute the allegations in the Indictment and that he was likely to assert his right not to testify or incriminate himself at a joint trial.  *Motion to Sever* (Docket No. 27).  The Government contended that Cattanea failed to demonstrate prejudice from joinder, failed to show that Hamilton had offered to testify on her behalf or would do so in a separate trial, and that judicial economy weighed heavily against severance. *Response* (Docket No. 28).

The Court denied the Motion citing Cattanea's failure to make any showing that Hamilton would in fact testify on her behalf if the severance was granted and deeming the failure to show that he offered or agreed to do so as "fatal" to the Motion.  *Memorandum Decision and Order* at 3 (citing *United States v. Castro*, 887 F.2d 988, 998 (9th Cir. 1989)) (Docket No. 42).

Following nine days of trial and three days of deliberation, a jury returned a verdict of guilty against Cattanea on 76 of 84 counts and against Hamilton on 55 of 72 counts.  Both defendants filed post-trial motions for acquittal and new trial which the Court denied.  *Memorandum Decision and Order* (Docket No. 111).

**Order - 2**

One of the grounds Cattanea offered in support of her motion was the prejudice she suffered from the Court's denial of her Motion to Sever. *Memorandum* at 6-7 (Docket No. 96). In addressing that specific ground, the Court again found that she had not made the required showing that Hamilton would have in fact testified on her behalf if the severance had been granted. *Memorandum Decision and Order* at 4 (Docket No. 111).

Hamilton died prior to sentencing resulting in dismissal of the Indictment against him. The Court sentenced Cattanea to twenty months imprisonment, three years of supervised release, restitution of $1,054,259.53, and a special assessment of $7,600 and found Cattanea to be a suitable candidate for self surrender. The Bureau of Prisons set July 13, 2010 as her report date. The Court recently extended that date to mid- to late-September upon motion of Cattanea and concurrence of the Government. *Order* (Docket No. 135). Cattanea has been compliant with terms of release.

Cattanea moves for release pending appeal on the grounds that she is raising two substantial questions on appeal that will likely result in reversal or an order for a new trial. Those questions pertain to the Court's denial of her motion to sever the trial and denial of her request for a good faith jury instruction.

**Order - 3**

## STANDARD OF LAW

In order to be released pending appeal, a defendant must demonstrate that he or she meets the statutory requirements for release set forth at 18 U.S.C. § 3143(b)(1).[1]  The Ninth Circuit has considered the operative statutory phrase "a substantial question of law or fact likely to result in a new trial" and concluded "that the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented."  *United States v. Handy*, 761 F.2d 1279, 1282 (9th Cir. 1985).  *Handy* adopted the "well-established, customary meaning" of "substantial question" and concluded that an issue is substantial if it is "fairly debatable" or "fairly doubtful" or "of more substance than would be necessary to a

---

[1]  " . . . the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds–

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

**Order - 4**

finding that it was not frivolous." *Id*. at 1282-83 (internal quotation marks and citations omitted).

## DISCUSSION

The Court essentially found by clear and convincing evidence at the sentencing hearing that Cattanea is not a flight risk or a danger to any other person or the community.  The Government agrees with that assessment and also states that it does not believe the appeal is brought for the purpose of delay.  *See Opposition* at 3 (Docket No. 131).  Therefore, the Court need only decide whether Cattanea meets the statutory requirement of demonstrating a substantial question likely to result in reversal or a new trial.

### A.    Motion to Sever

#### 1.    Applicable Law

Although in most cases defendants jointly charged are jointly tried, a court has the discretion to sever their trials pursuant to Rule 14 if joinder appears to prejudice either defendant or the government.  *Zafiro v. United States*, 506 U.S. 534, 538 (1993) (citing Fed. R. Crim. P. 14(a) and noting preference for joint trials to promote efficiency and to avoid inconsistent verdicts).  Indeed, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent

**Order - 5**

the jury from making a reliable judgment about guilt or innocence . . . ." *Id.* at

539.  Even if a defendant can show prejudice, Rule 14 does not necessarily require

severance.  *Id*. at 538-39 (noting the district court's discretion in determining the

risk of prejudice and the appropriate remedy).   "When the risk of prejudice is high,

a district court is more likely to determine that separate trials are necessary, but . . .

less drastic measures, such as limiting instructions, often will suffice to cure any

risk of prejudice." *Id*. at 539.

Given the preference for joint trials and the extent of the trial court's

discretion, it is difficult for a defendant to obtain reversal of the denial of a motion

to sever.  *United States v. Johnson*, 297 F.3d 845, 855 (9th Cir. 2002).  The fact

that chances of acquittal would have been higher with separate trials does not

constitute sufficient grounds for reversal.  *Id*.  Reversals are granted only when

"the joint trial was so manifestly prejudicial as to require the trial judge to exercise

his discretion [on the motion to sever] in just one way, by ordering a separate

trial." *Id*. (citing *United States v. Hanley*, 190 F.3d 1017, 1027 (9th Cir. 1999)).

When the need for a codefendant's testimony is the grounds for a motion to

sever, the defendant must show "(1) that he would call the codefendant at a severed

trial, (2) that the codefendant would in fact testify, and (3) that the testimony would

be favorable to the moving party." *United States v. Hernandez*, 952 F.2d 1110,

**Order - 6**

1115 (9th Cir. 1991) (internal citation omitted).  The court must then balance the weight and credibility of the expected testimony with principles of judicial economy.  *Id.* (citing *United States v. Castro*, 887 F.2d 988, 998 (9th Cir. 1989)).  Principles of judicial economy do not generally yield to claims of alleged prejudice from a codefendant's excluded testimony.  *Id.* (citing *United States v. Hoelker*, 765 F.2d 1422, 1425 (9th Cir. 1985)).

### 2.    Discussion

In her Motion to Sever, Cattanea did not indicate the willingness or likelihood that Hamilton would testify on her behalf.  However, she does so in her Motion for Release.  She states that during trial preparation meetings with Hamilton and his counsel, Hamilton expressed an intention to testify and to do so in a manner that would have been exculpatory on the intent issue.  *Motion for Release* at 2-3.  Apparently, Hamilton continued to indicate throughout the trial that he would testify, but at trial's end, he decided against it.  *Id*. at 3.

In opposing the motion for release, the Government reiterated its earlier arguments that Cattanea did not state Hamilton would testify on her behalf or provide sufficient information for the Court to evaluate the weight and credibility of the proposed testimony.  The Government also diminished the importance of the now-proffered testimony.

**Order - 7**

On appeal, the Ninth Circuit will be assessing the correctness of the Court's denial of the Motion to Sever based on the information before the Court at the time it considered the Motion.  As stated above, the Court relied on *Castro* in denying the Motion on the sole ground that Cattanea did not make the showing required by *Castro* that Hamilton would testify on her behalf.  Therefore, the issue essentially becomes whether *Castro* requires such a showing.  Cattanea argues that *United States v. Cuozzo*, 962 F.2d 945 (9th Cir. 1992), supports the view that a threshold showing that a codefendant will testify is not required.  The Court does not agree.

In *Castro*, the defendants Castro and Cotter appealed the district court's denial of their motions for severance.  Cotter argued that based on Castro's testimony in a prior case, there was a "likelihood" that Castro would have presented exculpatory testimony.  He did not make a showing that Castro had offered or agreed to so testify.

The court determined that Cotter had not made the requisite "foundational showing" to justify relief, because:

> A party moving for severance based on the need for a codefendant's testimony must show that he or she would call the codefendant to testify, that the codefendant would testify and that the testimony would be favorable to the moving party.  The district court must then consider the weight and credibility of the proposed testimony and the economy of severance.

Order - 8

*Id*. at 998 (citations omitted).

 *Cuozzo* states the standard somewhat differently:

> [T]he trial court must weigh several factors, including the good faith of the intent to have a codefendant testify, the probability that the testimony will materialize, the economy of a joint trial, the possible weight and credibility of the predicted testimony, and the degree to which the predicted testimony is exculpatory.

*Cuozzo*, 962 F.3d at 950 (citing *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991)).

 Even though *Cuozzo* requires a showing of "the probability that the testimony will materialize" rather than *Castro*'s "the co-defendant will testify," the effect is virtually the same. A party cannot show that the testimony will materialize by merely stating an opinion as to what the expected testimony would be. Furthermore, *Cuozzo* did not even address the issue of whether a defendant must show that a co-defendant would testify. Rather, *Cuozzo* merely cited the standard stated in *Mariscal*. Notably, one of reasons given in *Mariscal* for upholding the denial of the motion to sever is that the defendant did not present an affidavit from his co-defendant "swearing" that the co-defendant would testify. *See United States v. Mariscal*, 939 F.2d 884, 886 (9th Cir. 1991).

 Cattanea has not cited any cases other than *Cuozzo* supportive of her view that she was not required to make a threshold showing that Hamilton would testify.

**Order - 9**

In addition to *Castro* and *Mariscal*, the Ninth Circuit has consistently held otherwise.  *See, e.g., United States v. Jamison*, 61 F.3d 913 (9th Cir. 1995) (unpublished table decision) (noting failure to show that his wife would testify and vague assertions of relevancy of wife's testimony); *United States v. Hoelker*, 765 F.2d 1422, 1425 (9th Cir. 1985) (noting that assertion "was supported only by the conclusory hearsay statement of [co-defendant's] counsel").  The Court simply can not find the issue to be "fairly debatable" or "fairly doubtful."[2]

## B.    Good Faith Instruction

Cattanea also plans to appeal the Court's denial of a good faith jury instruction on the grounds that the "intent to defraud" instruction did not adequately cover her theory that she placed good faith reliance on Hamilton and his billing practices.  The Government contends that Cattanea provides no other

---

[2] Even if  Cattanea had made the requisite showing regarding intent to testify, the Court likely would not have allowed severance given the preference for joint trials and considerations of judicial economy.  As the Government noted in its brief in opposition to the Motion to Sever, it would have had to call approximately thirty-five witnesses for two trials; the United States Attorney's Office personnel and investigative agents would have had to travel from Boise to Pocatello twice for trial and trial preparation; and the defendants were charged together in seventy-two of the eighty-four counts.  *Opposition* at 6 (Docket No. 28).  Furthermore, the Court's resources would have been strained with the necessity of having two three-week trials. Even though slightly fewer witnesses were called and the trial was slightly shorter than predicted, separate trials would have still used a significant amount of government and Court resources.

**Order - 10**

facts or argument suggesting that the Court's detailed instruction on the state of mind elements was insufficient.  The Court agrees.

"Good faith is always a defense to fraud.  However, a specific good faith instruction is unnecessary where the court has already adequately instructed the jury as to specific intent."  *United States v. Dees*, 34 F.3d 838, 842 (9th Cir. 1994) (citations omitted).  *See also United States v. Lorenzo*, 995 F.2d 1448, 1455 (9th Cir. 1993); *United States v. Rushton*, 963 F.2d 272, 274 (9th Cir. 1992); *United States v. Bonanno*, 852 F.2d 434, 440 (9th Cir. 1988); *United States v. Gomez-Osorio*, 957 F.2d 636, 642 (9th Cir. 1992).  Cattanea has not cited any cases to the contrary.  The Court gave an instruction on specific intent that was substantially similar to that proposed by Defendants and the Government.  *Jury Instruction No. 15*.  Cattanea does not now allege that the instruction itself was inadequate.

## CONCLUSION

The Court has granted release pending appeal in only a handful of cases given the high burden placed on defendants seeking release pending appeal.  The Court finds that Cattanea, like most defendants, has not met that burden here. Neither the denial of her Motion to Sever nor the failure to give a good faith instruction presents a substantial question.  The law on those issues is settled and not debatable.  Thus, the Court must deny the Motion for Release.

**Order - 11**

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Cattanea's Motion for

Release Pending Appeal (Docket No. 130) is DENIED.

DATED:  **July 6, 2010**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

Order - 12